**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GREG HERNANDEZ, and | § | |
| DEANNE HERNANDEZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-915 |
| | § | |
| FORT BEND ISD *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

This sad case alleges a sexual assault of one intellectually disabled middle-school student by another, on a school bus. Greg and Deanne Hernandez, individually and on their daughter's behalf, have sued the Fort Bend Independent School District; Michael Brassfield, the District Executive Director of Transportation; Julia Nick, the District Transportation Supervisor; Henry Henderson, a District Bus Driver; Gloria Castillo, a former District Bus Monitor; Deena Hill, the District Special Education Director; and "Grandmother Roe," the guardian of the student alleged to have committed the sexual assault. (Docket Entry No. 1-2 at 15–17). The defendants moved to dismiss, asserting various forms of governmental immunity and arguing that the amended petition fails to allege facts that state plausible claims. (Docket Entry Nos. 9, 11). The plaintiffs deny that governmental immunity applies and argue that the amended petition includes factual allegations that state plausible claims.

After a careful review of the amended petition, motions, response, and the applicable law, the court grants the motions to dismiss, with prejudice on some claims, and without prejudice as to others. As to those claims dismissed without prejudice, the plaintiffs must file an amended complaint no later than June 14, 2019. The reasons for these rulings are explained in detail below.

## I.    The Background

The facts are drawn from the plaintiffs' complaint, with the well-pleaded allegations accepted as true for this motion.

In January 2017, the plaintiffs' daughter, J.H., was a student at the District's Bains Middle School.   J.H. had an intellectual disability that required her to receive special care.   For each intellectually disabled student, the District created an Individual Education Plan to manage the student's education and care.   On January 23, a District employee escorted J.H. from her classroom to a "special education bus," as her Plan required, and left her outside the bus.   (Docket Entry No. 1-2 at 17).   A male student, also intellectually disabled, was similarly escorted to the bus and left. (*Id.* at 18).   There are no allegations giving the children's ages or their levels of disability.   A security camera on the bus captured what happened next.

J.H. boarded the bus and sat in the front row, near the window, and the male student followed and sat next to her.   (*Id.*).   "Within seconds," the male student pulled J.H.'s pants down and began to sexually assault her.   (*Id.*).   Another female student on the bus saw what was happening, exclaimed "I can't look," and then said "Oh my God, that is so disgusting." (*Id.*).   J.H. looked around "for help and appear[ed] to (ineffectually) resist." (*Id.*).

Gloria Castillo, the District employee charged with escorting the students to their bus seats, securing their seatbelts, and ensuring their safety, was on her cellphone in the back of the bus.   (*Id.* at 18–19).   The female student continued "her outcry," looked around, and pointed toward J.H. and the male student.   Castillo noticed the female student and asked her "what?"  (*Id.* at 19).   The female student pointed again at J.H. and the male student, and said: "This!"

Castillo finally saw what was happening, grabbed the male student, and asked "[w]hat [were] you doing?" (*Id.*).   J.H. pulled up her pants.   (*Id.*).   Castillo told the male student to "get

up, get up," but he did not do so. (*Id.*). Castillo then told J.H. to move to a seat behind the front row, forcing her to "crawl across" the male student. (*Id.*).

The bus driver, Henry Henderson, boarded the bus and asked Castillo whether they had "got everybody." (*Id.*). Henderson and Castillo began talking, "presumably" about what happened. (*Id.*). After their conversation, Castillo moved the male student to the back of the bus and returned J.H. to her front-row seat. (*Id.*). Henderson then began the bus route, dropping off students at their designated locations.

Castillo and Henderson did not immediately report the incident to District officials, law enforcement, or the plaintiffs. (*Id.* at 20). Henderson dropped J.H. off at her home "with a wave goodbye." (*Id.*). When the male student was dropped off at his home, Castillo told his guardian, Grandmother Roe, about what happened. (*Id.*).

Castillo and Henderson did not report the incident until they "returned to the District headquarters" later that day. (*Id.* at 21). A District employee then notified the Fort Bend Police Department. (*Id.*). The Police Department sent Officer Cruz to the Bains Middle School, where he spoke with Julia Nick, the school's "special education transportation supervisor." (*Id.*). Nick directed Officer Cruz to Castillo and Henderson, who each gave a statement. (*Id.*).

Officer Cruz and Nick contacted Grandmother Roe and the plaintiffs, informing the plaintiffs of the alleged assault at "6:50 p.m., nearly two and one-half hours after the attack," and advising them to take J.H. to Texas Children's Hospital for an examination. (*Id.*). At 8:35 p.m., Officer Cruz reported the incident to the Texas Department of Family and Protective Services. (*Id.* at 22). No one from "the District contacted [Child Protective Services] immediately after" the incident. (*Id.*).

Officer Cruz reviewed and "retained" the footage from the security camera on the bus, without providing it to "the District Superintendent's office, the District General Counsel's office[,] or to the District Human Resources office at that time, or even later." (*Id.* at 21–22).

The plaintiffs took J.H. to the Harris County Children's Advocacy Center for an examination on January 24. (*Id.* at 21). Child Protective Services "arranged for an interview and forensic examination" of J.H. on January 30. (*Id.* at 22). A Child Protective Services representative told the plaintiffs that the matter had been referred to the Fort Bend District Attorney. (*Id.*).

By February 2017, the plaintiffs had not heard from Child Protective Services or the District Attorney. (*Id.*). The plaintiffs contacted Child Protective Services, which told them that it had "ruled out pursuing the case." (*Id.*). The Police Department closed its case on March 6. (*Id.*). In April, the plaintiffs spoke with Chief Deputy District Attorney Tyra McCollum, who told them that the case was "on intake." (*Id.*). In September, the plaintiffs were told "that the 'case was delayed due to a personal issue of McCollum, but was now progressing.'" (*Id.* at 23). A few months later, in October, McCollum told the plaintiffs that the District Attorney would not pursue the case because it could not prove that the male student "acted knowingly." (*Id.*).

In November, the District's Legal Office and Human Resources became aware of the incident and saw the incident footage. (*Id.*). The District fired Castillo "sometime in late November 2017." (*Id.*). In December 2017, Charles Dupre, the District Superintendent, called the plaintiffs and told them that they could watch the incident footage. (*Id.*). He warned that the footage contained "very disturbing things"; that he "felt like he owes an apology"; and that "nothing came to be earlier because the District police took possession of the video." (*Id.*).

Superintendent Dupre told the plaintiffs that the alleged assailant was no longer in a District school, and that the District had fired Castillo. (*Id.* at 23–24).

In February 2018, the plaintiffs met with District officials, including Superintendent Dupre, General Counsel Robert Scamardo, Special Education Director Deena Hill, the Fort Bend Police Chief, the District Title IX Coordinator, and District Transportation Department employees. (*Id.* at 24). The District officials "expressed 'regret' over the 'incident' and apologized." (*Id.*). Director Hill "committed to providing [the plaintiffs] with a 'protocol' she was developing to address prevention of 'incidents' like the one occurring on the bus the previous year." (*Id.*).

The plaintiffs' amended petition alleged that:

> While Hill ultimately provided a make-shift protocol to [the plaintiffs], it did not address or even obliquely reference procedures to prevent assaults on District transportation, safety of the District's most vulnerable students—special education students under her charge—or otherwise address training (in conjunction with the District's essentially non-existent Title IX program or policies) of District personnel, including transportation employees and others, in assisting special education students. . . .
>
> The District, to date, lacks a coherent, cogent Title IX plan to train personnel, inform students, and prevent sexual harassment, and has done nothing to alter its operations other than to finally explicitly require bus drivers to be present on the bus while students are being loaded, and (ten months after the incident) terminate Castillo.

(*Id.* at 24).

The plaintiffs sued in state court, asserting claims under the Texas Tort Claims Act; 42 U.S.C. §§ 1983 and 1985; the Americans with Disabilities Act; Title IX; and for negligent supervision. (Docket Entry No. 1 at 1-2 at 24–27). In addition to damages, the plaintiffs sought injunctive relief ordering the District to:

> a. [a]dopt an anti-sexual harassment education, training, and implementation program that is provided by a third party;

b.      [a]dopt policies, procedures, and practices commensurate with the "Dear Colleague Letter" dated 26, 2010, from the United States Department of Education Office for Civil Rights to include but not be limited to:

   (1)     the provision of school assemblies and instruction on sexual harassment, including, but not limited to instruction and training regarding special education students;

   (2)     addressing sexual harassment based upon disability and gender and common stereotypes that accompany those subjects in classroom intervention settings;

   (3)     conducting a sexual harassment assessment at each campus, District activity center, and District department office;

   (4)     forming a sexual harassment prevention coordination team at each school;

   (5)     including language specifically identifying sexual harassment based upon disability and gender and common stereotypes that accompany those subjects in the school rules and student handbook;

   (6)     develop a strategy to prevent such sexual harassment in District "hot spot[s";]

   (7)     post signs in classrooms prohibiting such sexual harassment and listing its consequences; and

   (8)     provide a place and manner of confidential reporting and encouraging students to help classmates who are being sexually harassed, and to report such sexual harassment;

c.      [t]hat for the next three years, the District provide for a school Title IX coordinator for each Campus, so as to ensure that the program is enacted comprehensively;

d.      [t]hat the District retain a neutral third party to complete a sexual harassment assessment for each District campus, District activity center and District office, and have that person or entity report back to the President of the School Board and Superintendent so the District may address any issues noted in the assessment;

e.      [t]hat staff receive "Title IX" training by a third party to include information about gender and disability stereotypes;

f.	[t]hat the District provide a marker in each school library where books and other materials would be made available to students dealing with sexual harassment, and related emotional concerns and issues related to gender and disability along with common stereotypes that accompany those subjects;

g.	[t]hat an anti-sexual harassment month be recognized by [the] District;

h.	[t]hat the District help facilitate the provision of counseling services for students deemed to be at risk; and

i.	[t]hat the District Board of Trustees appoint a committee, including interested members of the public, to address the issues noted above, report back to the Board with recommendations, and act in accordance with those recommendations.

(Docket Entry No. 1-2 at 28–29).

The defendants answered, removed, and moved to dismiss the complaint for failure to state a plausible claim.  (Docket Entry Nos. 1, 9, 11).  Henderson argues that he is entitled to qualified immunity, precluding the § 1983 claim, and that the plaintiffs lack standing in their individual capacities because they did not allege "any injuries or damages."  (Docket Entry No. 11 at 7–10).  The District, Brassfield, Nick, and Hill contend that: the plaintiffs lack standing in their individual capacities; the complaint does not allege disability discrimination that supports a plausible ADA claim; the complaint does not allege facts that state a plausible Title IX claim; Texas law bars the plaintiffs' tort claims against the District; and Brassfield, Nick, and Hill are entitled to qualified immunity.  (Docket Entry No. 9 at 11–26).

The plaintiffs responded that Henderson, Brassfield, Nick, and Hill are not entitled to qualified immunity as to the § 1983 claims because the amended petition has factual allegations supporting that they violated a clearly established Fourteenth Amendment due-process right, and factual allegations stating plausible claims under the Texas Tort Claims Act, ADA, and Title IX.  (Docket Entry No. 20 at 3–9; 13–16).  The parties' arguments and responses are examined in detail below.

## II.     The Legal Standard for a Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

The court should generally give a plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend." (quotation omitted)); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").  A court may deny a motion to amend for futility if an amended complaint would fail to state a claim on which relief could be granted, using the Rule

12(b)(6) standard. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012). The district court has discretion to grant or deny leave to amend. *Id.*

## III. Analysis

### A. Standing

The court begins by examining whether the plaintiffs have standing to sue in their individual capacities and to seek injunctive relief. *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016) ("Standing is a threshold issue that we consider before examining the merits."). The plaintiffs' amended petition asserts claims individually and on their daughter's behalf. (Docket Entry No. 1-2 at 15). But there are no allegations supporting an inference that the plaintiffs were injured by their daughter's assault. The allegations relate to injuries to J.H. because of the District's alleged discrimination or harassment, Henderson's and Castillo's failure to supervise the students on the bus, and Grandmother Roe's failure to correct the student's behavior. (Docket Entry No. 1-2 at 24–28).

The amended petition, however, provides no basis for the court to infer that the plaintiffs, in their individual capacities, suffered legal harm that confers standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is . . . concrete and particularized."); *see also Bennett v. Spear*, 520 U.S. 154, 167–68 (1997) ("[E]ach element of Article III standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" (quoting *Lujan*, 504 U.S. at 561)). The

plaintiffs' claims asserted in their personal capacities are dismissed, without prejudice, and with leave to amend.

There is another obstacle to finding allegations supporting standing. For standing to seek injunction relief, a plaintiff must show that "there is a real and immediate threat of repeated injury." *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 366 (5th Cir. 2018) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "Past injury alone is insufficient; the plaintiff must show a 'real or immediate threat that the plaintiff will be wronged again.'" *Id.* (quoting *Lyons*, 461 U.S. at 111); *see also Ark. Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) ("To seek injunctive relief, the plaintiff must show a real and immediate threat of future or continuing injury apart from any past injury."). The amended petition does not allege that J.H. is or will be enrolled as a student in the District,[1] or that she otherwise faces a real and immediate threat of future injury related to sexual harassment or assault. The court has no basis to find that the plaintiffs have standing to seek injunctive relief on her behalf. *See Shaw*, 775 F.3d at 648 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunction relief." (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). The plaintiffs' claims for injunctive relief are dismissed, without prejudice, and with leave to amend.

**B.      Who is Sued for What?**

The amended petition does not make clear which causes of action the plaintiffs assert against which defendant. It appears that the plaintiffs assert claims against the following defendants:

---

[1] The amended petition states that J.H. and the male student "are 'special needs' students of the District, developmentally disabled, and part of the District's special education program." (Docket Entry No. 1-2 at 17). This allegation appears to mean that J.H. and the male student were District students in January 2017, when the sexual assault occurred. Later in the amended petition, the plaintiffs state that the male student is "no longer a student in the District," without saying whether J.H. still goes to school there. (*Id.* at 24).

- Texas Tort Claims Act—the District;[2]

- 42 U.S.C. § 1983—Brassfield, Nick, Henderson, Castillo, and Hill;

- 42 U.S.C. § 1985—Brassfield, Nick, and Hill;

- ADA—the District;

- Title IX—the District; and

- Negligent supervision—Grandmother Roe.

Each claim is analyzed below.

### 1.      The Section 1983 and 1985 Claims

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 347 (5th Cir. 2017) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). "This immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Swanson*, 659 F.3d at 371 (quoting *Malley v. Briggs*, 45 U.S. 335, 341 (1986)). Once a defendant has asserted qualified immunity, the plaintiff must prove that the defendant "(1) 'violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Brinsdon*, 863 F.3d at 347 (quoting *Swanson*, 659 F.3d at 371). The court may begin by analyzing either qualified-immunity step. *See Pearson v. Callahan*, 555 U.S. 223, 236–42 (2009).

Brassfield, Nick, Henderson, and Hill assert that they are entitled to qualified immunity as to the §§ 1983 and 1985 claims. (Docket Entry No. 9 at 26; Docket Entry No. 11 at 4–8). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the

---

[2] The plaintiffs state that the claim under the Texas Tort Claims Act is only against the District. (Docket Entry No. 20 at 16).

inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

Henderson, the District bus driver, argues that he has qualified immunity as to the § 1983 claim because he was not on the bus when the assault occurred and did not personally violate a clearly established Fourteenth Amendment due-process right. (Docket Entry No. 11 at 7). Brassfield, Nick, and Hill contend that they have qualified immunity as to the § 1983 claim because the amended petition does not identify the clearly established Fourteenth Amendment due-process right that they violated, and because the allegations do not plausibly support the claimed violation. (Docket Entry No. 9 at 22–24). Brassfield, Nick, and Hill argue that they have qualified immunity as to the § 1985 claim because the factual allegations fail to state a plausible claim. (*Id.* at 24–26).

The plaintiffs argue that these defendants are not entitled to qualified immunity because, "[t]hrough its obligations under both Federal and Texas law, the District has assumed a special relationship" with J.H. (Docket Entry No. 20 at 11). They assert that the District created this special relationship by devising and approving, and agreeing to implement, J.H.'s Individual Education Plan. (*Id.* at 11–13). This Plan required the District to "prevent her from unsupervised activities"; "escort" her "to and from school activities"; and transport her safely on the bus. (*Id.*). The plaintiffs do not argue the § 1985 claim, and they appear to have abandoned it.

### a. The Section 1983 Claims

The plaintiffs assert that Brassfield, Nick, Henderson, and Hill deprived J.H. of "rights secured under the [F]ourteenth [A]mendment to the United States Constitution." (Docket Entry No. 1-2 at 25). "To state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir.

2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)).  "The right to be protected by the state from private violence is limited and rests on substantive due process."  *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 688 (5th Cir. 2017) (citing *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 853 n.2 (5th Cir. 2012) (en banc)); *see DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).

The "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause," unless the state has created "a 'special relationship' with a particular citizen, requiring the state to protect him from harm."  *Covington*, 675 F.3d at 855–56 (quoting *Deshaney*, 498 U.S. at 199–200).  "The situations in which the state assumes a duty of care sufficient to create a special relationship are strictly enumerated and the restrictions of each situation are identical."  *Id.* at 859.  "In the circumstances of incarceration, involuntary institutionalization, and foster care, the state has, through an established set of laws and procedures, rendered the person in its care completely unable to provide for his or her basic needs and it assumes a duty to provide for these needs."  *Id.*

"[A] public school does not have a . . . special relationship with its students requiring the school to ensure the students' safety from private actors."  *Id.* at 857; *see, e.g.*, *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 973–74 (9th Cir. 2011) (no special relationship found between a school and intellectually disabled students).  "Public schools do not take students into custody and hold them there against their will in the same way that a state takes prisoners, involuntarily committed mental health patients, and foster children into its custody."  *Covington*, 675 F.3d at 857–58.  The "parents remain the primary source for the basic needs of their children."  *Id.* at 859 (quoting *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1415 (5th Cir. 1997)).

While the District created an Individual Education Plan for J.H. and cared for her at school, giving her special attention due to her disabilities, the plaintiffs remained J.H.'s primary caregivers. There is no allegation in the complaint that the District became J.H.'s primary caregiver or took her into custody. J.H. has failed to allege facts supporting a plausible inference of a special relationship with the District, as needed, to support a Fourteenth Amendment substantive due-process violation. *See Covington*, 675 F.3d at 859 ("Neither the Supreme Court nor this court has ever suggested that anything less than . . . a total restriction is sufficient to create a special relationship with the state, regardless of the age or competence of the individual."); *Patel*, 648 F.3d at 974 ("In the case of a minor child, custody does not exist until the state has so restrained the child's liberty that the parents cannot care for the child's basic needs. . . . A tailored educational program for a disabled student does not meet this threshold." (citation omitted)); *DeShaney*, 489 U.S. at 200 (the state exercise of power must make a person "unable to care for himself").

The Fifth Circuit has noted, without endorsing, an exception to the special-relationship rule when the state has created a dangerous environment for the plaintiff and acted with deliberate indifference to that danger. *See Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 1001–02 (5th Cir. 2014). To qualify for this exception, a plaintiff would have to plead facts showing that the state actor: (1) created a dangerous environment; (2) knew it was "dangerous (deliberate indifference)"; and (3) used the state's "authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." *Id.* at 1002 (quoting *Dixon v. Alcorn Cty. Sch. Dist.*, 499 F. App'x 364, 366–67 & n.3 (5th Cir. 2012)). "The key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in 'affirmatively placing an individual in a position of danger.'" *Johnson v. Dall. Indep. Sch. Dist.*, 38 F.3d 198,

201 (5th Cir. 1994) (quoting *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1035 (11th Cir. 1987)).

Because school districts are not constitutionally responsible for ensuring student safety from private actors, including other students, pleading facts sufficient to show that the state-created danger exception applies is the only pleading basis to state a claim that Brassfield, Nick, Henderson, or Hill deprived J.H. of a Fourteenth Amendment substantive due-process right. *Lance*, 743 F.3d at 1001–02; *Covington*, 675 F.3d at 860–61. Because the Fifth Circuit has "repeatedly noted" that the state-created danger exception has not been recognized in this circuit, it is neither beyond debate nor clearly established law. *Lance*, 743 F.3d at 1002; *see Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (a law is clearly established only if the "relevant precedent" places the "constitutional question beyond debate" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Even if it was, the amended petition contains no allegations that Brassfield, Nick, Henderson, or Hill knew, or had reason to know, that the male student was likely to, or had a propensity to, commit sexual misconduct, or that leaving him unattended before he boarded the bus placed J.H. or other students on the bus in danger. Brassfield, Nick, Henderson, and Hill have qualified immunity as to the § 1983 claim. The plaintiffs' § 1983 claim is dismissed, with prejudice, because amendment would be futile.

### b.    The Section 1985 Claims

The plaintiffs assert that Brassfield, Nick, and Hill violated § 1985 "by and through their active conspiracy to obstruct justice by failing to disclose the true facts and circumstances of the events leading to [J.H.'s] injuries, and preventing [the plaintiffs] from pursuing lawful redress for the attack." (Docket Entry No. 1-2 at 25).

Section 1985 "creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010). While the amended petition does not state the form of conspiracy, the allegations appear directed to an obstruction conspiracy under § 1985(2), which "concerns conspiracies directed at the right of participation in federal judicial proceedings." *Id.* Section 1985(2) states:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2). "The gist of the wrong at which § 1985(2) is directed" is "intimidation or retaliation against witnesses in federal-court proceedings." *Haddle v. Garrison*, 525 U.S. 121, 125 (1998); *see also Nealy v. Hamilton*, 837 F.2d 210, 212 (5th Cir. 1988) (quoting *Brawer v. Horowitz*, 535 F.2d 830, 940 (3d Cir. 1976)).

Section 1985(2) prohibits: (1) conspiracies directed at preventing participation in federal-court proceedings; and (2) conspiracies to deny any citizen equal protection of the laws or to injure a citizen for his efforts to ensure the rights of others to equal protection. *Ard v. Rushing*, 597 F. App'x 213, 221 (5th Cir. 2014).

To plead a conspiracy to deter participation in federal-court proceedings, the plaintiff must allege facts supporting a plausible inference that the conspirators injured a "party or witness *in order* to deter him from attending or testifying in federal court." *Montoya*, 614 F.3d at 150

(emphasis in original); *see Kinney v. Weaver*, 367 F.3d 337, 355 (5th Cir. 2004) (en banc) ("[T]he conspirator must threaten or injure the witness on account of having so attended or testified—that is, because of, and by reason of, a person's participation as a witness." (quotation omitted)). "Plaintiffs seeking to recover under section 1985(2) must allege a nexus between the alleged conspiracy and a proceeding in federal court" and that "they were injured on account of having attended or testified in federal court." *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 758 (5th Cir. 1987) (quotation omitted).[3]   A conspiracy to deny a plaintiff's equal-protection rights requires "some racial, or class-based, invidiously discriminatory animus behind the conspirator's action." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010) (alterations omitted) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

The amended petition alleges that Nick, the District Transportation Supervisor, referred Officer Cruz to Henderson and Castillo, called the plaintiffs and Grandmother Roe the same day as the assault, and gave Officer Cruz a video of the assault.  (Docket Entry No. 1-2 at 21).  The amended petition alleges that Hill, the District Special Education Director, "committed to providing [the plaintiffs] with a 'protocol'" to prevent incidents like what happened on the bus, but that she gave them only a "make-shift protocol" that "did not address or even obliquely reference procedures to prevent assaults."  (Docket Entry No. 1-2 at 24).  The amended petition makes no allegations as to Brassfield, other than that he is the District's Executive Director of Transportation.  (*Id.* at 16).

---

[3] *See, e.g.*, *Ard*, 597 F. App'x at 221 ("To the extent that Ard's claim is premised on the first category, it must fail, as Ard has not contended that her right to participate in judicial proceedings has been impeded."); *Mitchell v. Johnson*, No. 07-40996, 2008 WL 3244283, at *3 (5th Cir. Aug. 8, 2008) ("[M]erely attempting to persuade the Plaintiff to dismiss his case, even if by deceit, does not rise to the level of force, intimidation, or threat contemplated by § 1985(2)." (quotation omitted)); *Deubert*, 820 F.2d at 758 ("[R]etaliation for attempting to file a federal lawsuit or even for actually filing such a lawsuit is insufficient to state a claim under section 1985(2) (quotation omitted)).

The amended petition does not allege that Brassfield, Nick, or Hill acted to directly affect the participation of a party, witness, or juror in a federal-court proceeding. It contains no allegations that J.H. participated in a federal-court proceeding or that Brassfield, Nick, or Hill injured or sought to injure her for doing so. Nor does the amended petition allege facts supporting a plausible claim that Brassfield, Nick, or Hill acted to deny J.H. equal protection based on a discriminatory animus toward intellectually disabled students. Because the plaintiffs have not alleged facts supporting a plausible inference that Brassfield, Nick, or Hill violated § 1985(2), the court dismisses the § 1985 claim, without prejudice, and with leave to amend.

### 2. The Claims Against the District

#### a. The Texas Tort Claims Act

The amended petition asserts that the District is liable for J.H.'s injuries under the Texas Tort Claims Act. The District asserts sovereign immunity, arguing that the Texas Tort Claims Act waives a school district's sovereign immunity only "as to motor vehicles," and that J.H.'s alleged injury did not result from the use of a motor vehicle. (Docket Entry No. 9 at 13 (quoting TEX. CIV. PRAC. & REM. CODE § 101.051)).

The plaintiffs respond that the sexual assault was "caused, in part at least, by the absence of the bus driver during the required escorting and seating of the students, and a failure of the aide to supervise both the victim and the perpetrator of the assault[,] . . . which occurred on the bus rather than off the bus." (Docket Entry No. 20 at 15). The plaintiffs state that the assault on J.H. resulted from how the District "utilized" the bus "in light of the special requirements for securing, supervising, and transporting" J.H. (*Id.* at 15–16).

"Generally, governmental units are entitled to immunity unless it has been waived." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 835 (Tex. 2018). The Texas Tort Claims Act

waives a school district's sovereign immunity from personal injuries from "the operation or use of a motor-drive vehicle." Tex. Civ. Prac. & Rem. Code §§ 101.021(1)–(2), 101.051; *see Hous. Indep. Sch. Dist. v. Durrell*, 547 S.W.3d 299, 306 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "[T]he only permissible state tort claim that citizens can bring against a school district in Texas is a claim for misuse of a motor vehicle." *S.N.B. v. Pearland Indep. Sch. Dist.*, 120 F. Supp. 3d 620, 631 (S.D. Tex. 2014).

For a claim to fall under this sovereign-immunity waiver, there must be "a nexus between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries." *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003). "This nexus requires more than mere involvement of property." *Id.* The vehicle's use "must have actually caused the injury." *Id.* (quoting *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001)). It is not enough that the motor vehicle "furnish[es] the condition that makes the injury possible." *Id.* (quoting *Dall. Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998)).

The amended petition alleges that the male student's actions and Henderson's and Castillo's failure to supervise the male student caused J.H.'s injuries. The sexual assault allegedly occurred before the bus began to move. The plaintiffs argue that the District's policies as to how to operate and monitor the bus contributed to causing the assault. The bus was the location of the assault, but the bus operation had nothing to do with the assault or J.H.'s injuries. The failure to monitor the intellectually disabled students on the bus, including J.H. and the male student, is a staff failure to watch students that could occur anywhere, unrelated to operating or using the bus. *See, e.g.*, *Whitley*, 104 S.W.3d at 543 ("Burkley and her accomplices caused Whitley's injuries, and the driver's failure to supervise Burkley may have contributed, but the operation or use of the

bus did not.").  Because there is no nexus between the bus's use or operation and J.H.'s injuries, the Texas Tort Claims Act does not waive the District's immunity to the plaintiffs' tort claim.  The tort claim is dismissed, without prejudice, and with leave to amend.

**b.     The Americans with Disabilities Act Claims**

The plaintiffs assert that the District denied J.H. "the benefits of services, programs, or activities" or otherwise "discriminated against" her because of disabilities, violating the Act. (Docket Entry No. 1-2 at 26).  The District has moved to dismiss this claim, arguing that the allegations do not support a plausible inference that J.H. was harassed because of her disability; the District was deliberately indifferent to the harassment; or J.H. requested an accommodation or was excluded from an educational benefit.  (Docket Entry No. 9 at 16–19).

The plaintiffs respond that the amended petition plausibly claims that J.H. was discriminated on the basis of her disability because the sexual assault "would not have occurred" but for "her presence on the special education bus as provided and required by the District," and but for Castillo and Henderson failing to pay inattention to the students on the bus.  (Docket Entry No. 20 at 4–6).  The plaintiffs argue their inattention violated "the District's (so-called) 'sexual harassment policy' [and] lend[s] further support to the contention that the District's actions were based on" J.H.'s disability.  (*Id.* at 5).

The Act states that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The District is a public entity.  *See* 42 U.S.C. § 12131(1); 28 C.F.R. § 35.104.  The Fifth Circuit has recognized claims based on peer-to-peer harassment and discrimination, including a failure to make reasonable accommodations.  *See Columbia-Brazoria*, 855 F.3d at 690; *Windham*

*v. Harris Cty.*, 875 F.3d 229, 235 (5th Cir. 2017); *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 380 (5th Cir. 2016). The amended petition does not identify the theory the plaintiffs rely on, but their response to the motion to dismiss addresses both the peer-on-peer harassment and discrimination theories.

To state a plausible peer-to-peer harassment claim, the plaintiffs must allege facts that could show that: (1) J.H. was an individual with a disability; (2) was harassed based on her disability; (3) the harassment was sufficiently severe or pervasive as to alter the condition of her education and create an abusive educational environment; (4) the District knew about the harassment; and (5) the District was deliberately indifferent. *Columbia-Brazoria*, 855 F.3d at 690.

The plaintiffs have failed to allege at least two of these elements. There are no allegations supporting a plausible inference that the male student sexually assaulted J.H. because of her intellectual disability. The plaintiffs' allegations that the District knew about J.H.'s disability and that Castillo and Henderson were inattentive to her general need for supervision resulting from her disability do not create a plausible inference that the male student sexually assaulted J.H. because she was disabled. Courts have declined to extend the Act's prohibition against discrimination to cover such intentional tortious acts as sexual assault. *See Strange v. Mansfield Indep. Sch. Dist.*, No. 18-CV-101, 2018 WL 3950219, at *3 (N.D. Tex. Aug 17, 2018); *Woodberry v. Dall Area Rapid Transit*, No. 14-CV-3980, 2017 WL 840976, at *7 (N.D. Tex. Mar. 3, 2017); *Ball v. St. Mary's Residential Training Sch.*, No. 14-2855, 2015 WL 3448470, at *2–*3 (W.D. La. May 28, 2015); *Woods v. G.B. Cooley Hosp. Serv. Dist.*, No. 07-926, 2007 WL 4812054, at *2 (W.D. La. Dec. 10, 2007).

Second, the amended petition has no allegations supporting a plausible inference that the District acted with deliberate indifference. A school district is deemed deliberately indifferent

"only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Lance*, 743 F.3d at 997 (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648–49 (1999)). This standard "grants a high level of deference to the school's judgment." *Nevills v. Mart Indep. Sch. Dist.*, 608 F. App'x 217, 221 (5th Cir. 2015). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (quoting *Doe ex rel. Doe v. Dall Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998)).

The amended petition alleges that Henderson and Castillo notified the District of the assault the same day as it happened. (Docket Entry No. 1-2 at 21). The District contacted the Fort Bend Police Department a few hours after the assault and provided the evidence it had, including the video of the assault, even before the District reviewed the video. (*Id.* at 21–22). The District also informed Grandmother Roe and the plaintiffs. (*Id.*). The Fort Bend Police Department notified Child Protective Services that same day; Child Protective Services promptly appointed an investigator and opened an investigation. (*Id.*). According to the amended petition, the Fort Bend Police Department kept the video until November 2017. (*Id.* at 23). The District reviewed the video in November 2017. (*Id.* at 23–24). The District fired Castillo in "late November." (*Id.*). District officials met with the plaintiffs in December 2017, apologizing and committing to revise policies. (*Id.* at 23–24). There are no allegations that J.H. had any contact with the male student after the assault.

These allegations do not support a plausible inference that the District acted with deliberate indifference to J.H.'s rights. Based on the amended petition's factual allegations, the District did not act unreasonably given the circumstances. The plaintiffs have not stated a plausible peer-to-peer harassment claim.

To state a plausible discrimination claim, the plaintiffs must allege facts that could show that: (1) J.H. has a qualifying disability; (2) she was denied the benefits of services, programs, or activities for which the public entity was responsible, or was otherwise discriminated against by the District; and (3) the discrimination was by reason of her disability. *Columbia-Brazoria*, 855 F.3d at 690; *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011); *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004). "Intentional-discrimination liability requires proof that the 'school district has *refused* to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program.'" *Columbia-Brazoria*, 855 F.3d at 690 (emphasis in original) (quoting *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010)). A plaintiff must allege a request for reasonable accommodations. *Shrub v. Univ. of Tex. Health Sci. Ctr. at Houston-School of Med.*, 63 F. Supp. 3d 700, 708–09 (S.D. Tex. 2014). The plaintiff's request triggers the public entity's obligation to "engage in an interactive process" to "determine the best means of accommodating the plaintiff's disability." *Id.* at 709 (quotation omitted).

The amended petition alleges that J.H. was part of the District's "special education program" and had an "Individual Education Program." (Docket Entry No. 1-2 at 17–18). The petition also alleges that Henderson's absence from the bus and Castillo's cellphone use were "in clear violation of District policy and protocol." (*Id.*). The plaintiffs' argue that the District "was on notice of" J.H.'s "need for supervision," citing an event "in November" that was not alleged in the amended petition. (Docket Entry No. 20 at 5). The amended petition does not contain factual allegations supporting a plausible claim that the District denied J.H. the benefits of its services, programs, or activities because of her disability. Nor does the amended petition allege that the plaintiffs, as J.H.'s guardians, requested a reasonable accommodation from the District that the

District denied without engaging in an interactive process. *Id.* The plaintiffs have failed to state a plausible discrimination claim.

The plaintiffs' Americans with Disabilities Act claim is dismissed, without prejudice, and with leave to amend.

### c.        The Title IX Claims

The plaintiffs allege that the District deprived J.H. "of rights and privileges" by "discriminating against her on the basis of disability." (Docket Entry No. 1-2 at 26). They also allege that the District deprived J.H. "of her right to not be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, on the basis of her sex." (*Id.*).

The District moves to dismiss these claims because Title IX does not prohibit disability discrimination; a single sexual-assault incident does not is not enough to show that J.H. faced pervasive and severe harassment; and the District was not deliberately indifferent to the harassment. (Docket Entry No. 9 at 20–21).

The plaintiffs respond that the disability-discrimination language in the Title IX claim was a "mere typographical error." (Docket Entry No. 20 at 6). The plaintiffs argue that the J.H.'s sexual assault by itself is sufficient to show that the harassment she faced was sufficiently severe to bar her access to an educational opportunity or benefit. (*Id.* at 6–7). They contend that the amended petition alleges facts that could show the District's deliberate indifference to the sexual harassment J.H. suffered because the District knew of a previous November 2016 incident, which was not alleged in the amended petition. They argue that the following allegations show deliberate indifference:

the District's subsequent failure to escort and/or supervise [J.H.] on the school bus, the District employee's failure to adequately escort and supervise the attacker (and in particular, the aide's use of a cell phone distracting her from the attack occurring mere feet away), the aide's and the driver's failure or refusal to follow the so-called sexual harassment policy, their failure or refusal to immediately remove the attacker and/or the victim from the bus and inform District officials and the students' parents/guardian, the aide and driver effectively trapping [J.H.] on the bus with her assailant after the attack, their apparent failure or refusal to notify their supervisors of the attack until after the students had been delivered to their residence, their failure or refusal to inform [J.H.'s] parent(s) of the attack but delaying the bus to inform the attacker's guardian, the District's employees failure to fully inform [J.H.'s] parents of the severity of the attack until hours after it [occurred].

(*Id.* at 8).

Title IX states that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A school district that receives federal funds may be liable for student-on-student harassment if the district: (1) had actual knowledge of the harassment; (2) the harasser was under the district's control; (3) the harassment was based on the victim's sex; (4) the harassment was so "severe, pervasive, and objectively offensive" that it effectively barred the person's access to an educational opportunity or benefit; and (5) the district was deliberately indifferent. *Lewisville*, 915 F.3d at 368 (citing *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011)). "A single incident could hypothetically be sufficiently severe to be a deprivation of access to education." *Watkins v. La Marque Indep. Sch. Dist.*, 308 F. App'x 781, 784 (5th Cir. 2009).

To the extent that the amended petition asserts a Title IX claim based on disability discrimination, that claim fails because Title IX addresses only sex-based discrimination, as the plaintiffs admit. *See* 20 U.S.C. § 1681(a); *Sanches*, 647 F.3d at 165 (the offensive behavior must "be based on sex").

Even assuming that the sexual assault effectively barred J.H.'s access to educational opportunity or benefit, the plaintiffs have failed to allege facts that could show deliberate indifference. "Deliberate indifference is an extremely high standard to meet." *Lewisville*, 915 F.3d at 368–69 (quotation omitted). The school district's "response to the harassment or lack thereof must be clearly unreasonable in light of the known circumstances." *Id.* (alteration and quotation omitted). As discussed, the amended petition alleges no prior notice to the District of a similar incident; the District reported the sexual assault to the Fort Bend Police Department, Grandmother Roe, and the plaintiffs within a few hours; the District turned over the video evidence it had, including a recording; and the District fired Castillo and met with the plaintiffs. The Fort Bend Police Department contacted Child Protect Services on the day of the assault.

The amended petition does not contain allegations regarding the November 2016 incident that the plaintiffs discuss in their response. The amended petition states that the District required J.H. to be escorted to the bus and that Castillo and Henderson violated District policy by using a cellphone, being absent from the bus, and failing to effectively separate J.H. and the male student immediately after the assault. (Docket Entry No. 1-1 at 18–21). The "acts and omissions" that the plaintiffs point to relate only to Castillo's and Henderson's conduct, not the District's actions, omissions, or policies. (Docket Entry No. 20 at 9). Based on the allegations, the court has no basis to find that the District, as opposed to Castillo and Henderson, was clearly unreasonable in response to the sexual assault in light of what it knew and when. The plaintiffs have failed to state a Title IX claim. The plaintiffs Title IX claim is dismissed, without prejudice, and with leave to amend.

### C. Service on Grandmother Roe

The plaintiffs filed this lawsuit in state court on January 23, 2019. (Docket Entry No. 1-2 at 2). The record gives no indication that Grandmother Roe has been served, waived service, or otherwise appeared in this litigation. Federal Rule of Civil Procedure 4(m) permits dismissal "if a defendant is not served within 90 days after the complaint is filed, unless the plaintiff shows good cause for the failure." *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017). No later than **June 14**, **2019**, the plaintiffs must serve Grandmother Roe or file a motion to extend the service deadline, showing good cause for the time extension and for having failed to timely serve her.

## IV. Conclusion

The defendants' motions to dismiss are granted. (Docket Entry Nos. 9, 11). The plaintiffs' claims in their personal capacities are dismissed, without prejudice. Their § 1983 claim is dismissed, with prejudice. The plaintiffs' tort claim and claims under § 1985, the ADA, and Title IX are dismissed, without prejudice. The plaintiffs must file an amended complaint attempting to address the deficiencies, no later **June 14**, **2019**. The plaintiffs must serve Grandmother Roe no later than **June 14**, **2019**. The defendants must file any new motion to dismiss by **July 15**, **2019**. The parties are to appear for an initial conference on **August 26, 2019**, at **11:00 a.m.**, in Courtroom 11-B, United States Courthouse, 515 Rusk Street, Houston, Texas.

SIGNED on May 1, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge