**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| GREG HERNANDEZ, and | § | |
| DEANNE HERNANDEZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-915 |
| | § | |
| FORT BEND ISD, and | § | |
| MARY TRAYNOR, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Greg and Deanne Hernandez, individually and on behalf of their daughter, B.H., have sued the Fort Bend Independent School District and Mary Traylor, the grandmother and guardian of another student, C.B.  B.H. and C.B. were special-needs middle-school students at the Fort Bend Independent School District.  C.B. sexually assaulted B.H. after they both boarded a school bus. The adult bus monitor, a District employee, was inattentive on her cellphone until another student alerted her.  This court granted the defendants' motion to dismiss the first amended complaint, without prejudice and with leave to amend.  (Docket Entry No. 21).  The second amended complaint brings claims under the Texas Tort Claims Act, the Americans with Disabilities Act, and Title IX against the District, and a negligent supervision claim against Traylor.  (Docket Entry No. 26).  Both defendants separately moved to dismiss, the plaintiffs responded, and both defendants replied.  (Docket Entry Nos. 29, 33, 32, 38, 34, 39).  The plaintiffs then moved for leave to supplement their second amended complaint, which both defendants oppose. (Docket Entry Nos. 40, 42, 43).

Based on the pleadings; the motions and responses; the law; and the arguments of counsel, the court grants the District's and Traylor's motions to dismiss, with prejudice and without leave to amend. The plaintiffs have already amended twice, and given the allegations in the amended complaint, it is clear that further amendment would be futile. The plaintiffs' motion for leave to supplement their complaint is denied because the proposed supplement does not add allegations that would lead to a different result.

The reasons for the rulings are set out below.

## I.      Background

The facts are drawn from the plaintiffs' second amended complaint, with the well-pleaded allegations accepted as true for the purpose of this motion. In January 2017, the plaintiffs' daughter, B.H.,[1] was a student at Fort Bend Independent School District's Bains Middle School. (Docket Entry No. 26 at ¶ 4.1). B.H. has an intellectual disability that requires her to receive special care. (*Id.*). The District creates an Individual Education Plan to manage each intellectually disabled student's education and care. (*Id.* at ¶ 4.2).

On January 23, a District employee escorted B.H. from her classroom to a "special education bus," as her Plan required, and left her outside the bus. (*Id.* at ¶ 4.9). A bus monitor was on the bus. (*Id.* at ¶ 4.13). C.B., an intellectually disabled male student, was similarly escorted to and left at the bus. (*Id.* at ¶ 4.10). There are no allegations about the children's ages or their levels of disability. A security camera on the bus captured what happened next.

B.H. boarded the bus and sat in the front row, near the window, and C.B. followed and sat next to her. (*Id.*). "Within seconds," C.B. pulled B.H.'s pants down and began to sexually assault

---

[1] This court's May 2019 opinion referred to the student as "J.H." The second amended complaint refers to her as "B.H."

her.  (*Id*.).  Another female student on the bus saw what was happening, exclaimed "I can't look," and then said, "Oh my God, that is so disgusting."  (*Id*. at ¶¶ 4.10-4.11).  B.H. looked around "for help and appear[ed] to (ineffectually) resist."  (*Id*. at ¶ 4.11).

The bus driver, Henry Henderson, was not on the bus.  (*Id*. at ¶ 4.12).  Gloria Castillo, the District employee charged with escorting the students to their bus seats, securing their seatbelts, and monitoring their safety, was on her cellphone in the back of the bus.  (*Id*. at ¶ 4.13).  The female student continued "her outcry," looked around, finally got Castillo's attention, pointed toward B.H. and C.B., and said: "This!"  (*Id*.).

Castillo grabbed C.B., asking "[w]hat [were] you doing?" (*Id*. at ¶ 4.15).  B.H. pulled up her pants.  (*Id*.).  Castillo told the male student to "get up, get up," but he did not do so.  (*Id*. at ¶ 4.16).  Castillo told C.B. to move to a seat behind the front row, forcing her to "crawl across" C.B. (*Id*. at ¶ 4.16).

Henderson boarded the bus and asked Castillo whether they had "got everybody."  (*Id*.).  Henderson and Castillo began talking, "presumably" about what had happened.  (*Id*.).  After their conversation, Castillo moved C.B. to the back of the bus and returned B.H. to her front-row seat. (*Id*.).  Henderson then began the bus route, dropping students off at their designated locations.

Castillo and Henderson did not immediately report the incident to District officials, law enforcement, or the plaintiffs.  (*Id*. at ¶ 4.19).  Henderson dropped B.H. off at her home "with a wave goodbye."  (*Id*. at ¶ 4.20).  When C.B. was dropped at his home, Castillo told his grandmother and guardian, Mary Traylor, what had happened.  (*Id*. at ¶ 4.21).

Castillo and Henderson reported the incident when they "returned to the District headquarters" later that day.  (*Id*.).  A District employee notified the Fort Bend Police Department. (*Id*.).  The Police Department sent Officer Cruz to the Bains Middle School, where he spoke with

3

Julia Nick, the school's "special education transportation supervisor." (*Id*.). Nick directed Officer Cruz to Castillo and Henderson, who each gave a statement. (*Id*.). No one from "the District contacted [Child Protective Services] immediately after" the incident. (*Id*.).

Officer Cruz and Nick contacted Traylor and B.H.'s parents at "6:50 p.m., nearly two and one-half hours after the attack," and advised the parents to take B.H. to Ben Taub Hospital to meet an investigator. (*Id*. at ¶ 4.23). They were later contacted by Anna Herman, a District police investigator, who advised them to take B.H. to Texas Children's Hospital for an examination. (*Id*. at ¶ 4.24).

Officer Cruz reviewed and retained the footage from the bus security camera, without providing it to "the District Superintendent's office, the District General Counsel's office[,] or to the District Human Resources office at that time." (*Id*.). At 8:35 p.m., Officer Cruz reported the incident to Child Protective Services. (*Id*. at ¶ 4.25). Child Protective Services investigator Tony Phan was assigned to investigate. (*Id*.). District police investigator Herman "arranged for an interview and forensic examination" of B.H. on January 30. (*Id*. at ¶ 4.26). She told B.H.'s parents that the matter had been referred to the Fort Bend District Attorney. (*Id*.).

By February 2017, the plaintiffs had not heard from Child Protective Services. (*Id*. at ¶ 4.27). They contacted Child Protective Services investigator Phan, who told them that that the agency had "ruled out pursuing the case." (*Id*.). He also told them he thought "C.B. was a danger to other females in his residence" and indicated "the possibility of a prior report of sexual misconduct or other inappropriate behavior by C.B." (*Id*.). C.B. was removed from the District school and placed in "state custody in a 'state school.'" (*Id.*).

The District police closed its case in early March 2017. (*Id*. at ¶ 4.28). In April, the plaintiffs spoke with Chief Deputy District Attorney Tyra McCollum, who told them that the case

was "on intake." (*Id*.).  In September, the plaintiffs were told "that the 'case was delayed due to a personal issue of McCollum, but was now progressing.'" (*Id*.).  In November, McCollum told the plaintiffs that the District Attorney would not pursue the case for lack of proof that C.B. "acted knowingly." (*Id*.).

In November, the District's legal office and human resources offices became aware of the incident and saw the incident footage.  (*Id*. at ¶ 4.30).  The District fired Castillo "sometime in late November 2017." (*Id*. at ¶ 4.31).  In December, Charles Dupre, the District superintendent, called the plaintiffs and told them that they could watch the incident footage.  (*Id*. at ¶ 4.32).  He warned that the footage contained "very disturbing things"; that he "felt like he owe[d] an apology"; and that "nothing came to be earlier because the District police took possession of the video." (*Id*.). Superintendent Dupre told the plaintiffs that C.B. was no longer in a District school, and that the District had fired Castillo. (*Id*.).

In February 2018, the plaintiffs met with District officials, including Superintendent Dupre, General Counsel, Robert Scamardo, Special Education Director Deena Hill, the Fort Bend Police Chief, the District Title IX Coordinator, and some of the District's Transportation Department employees.  (*Id*. at ¶ 4.33).  The District officials "expressed 'regret' over the 'incident' and apologized." (*Id*.). Director Hill "committed to providing [the plaintiffs] with a 'protocol' she was developing to address prevention of 'incidents' like the one occurring on the bus the previous year." (*Id*. at ¶ 4.34).

The plaintiffs allege that:

> While Hill ultimately provided a make-shift protocol to [the plaintiffs], it did not address or even obliquely reference procedures to prevent assaults on District transportation, the safety of the District's most vulnerable students—special education students under her charge—or otherwise address training (in conjunction with the District's essentially non-existent Title IX program or policies) of District personnel, including transportation employees and others, in assisting special education students.

. . .

> The District, to date, lacks a coherent, cogent Title IX plan (as required by federal offices) to train personnel, inform students, and prevent sexual harassment, and has done nothing to alter its operations other than to finally explicitly require bus drivers to be present on the bus while students are being loaded, and (ten months after the incident) terminate Castillo.

(*Id.* at ¶¶ 4.34-4.35).

The plaintiffs sued in state court, asserting claims under the Texas Tort Claims Act; 42 U.S.C. §§ 1983 and 1985; the Americans with Disabilities Act, 42 U.S.C. § 12132; and Title IX, 20 U.S.C. § 1681, against the District and certain District employees. (Docket Entry No. 1-2 at 24–26).  They also asserted negligent supervision of C.B. against his guardian, Traylor.  (*Id.* at 27).  In addition to damages, the plaintiffs sought an injunction requiring the District to adopt a series of policies and training.  (Docket Entry No. 1-2 at 28–29).

The defendants answered, removed, and moved to dismiss the complaint for failure to state a plausible claim.  (Docket Entry Nos. 1, 9, 11).  The court granted the defendants' motions to dismiss, dismissing the plaintiffs' claims in their personal capacities without prejudice, their § 1983 claims with prejudice, and their tort claim and their § 1985, Americans with Disabilities Act, and Title IX claims without prejudice.  (Docket Entry No. 21).  The plaintiffs filed a second amended complaint, again asserting claims under the Texas Tort Claims Act, the Americans with Disabilities Act, and Title IX against the District, and for negligent supervision against Traylor. (Docket Entry No. 26).  Again, the plaintiffs requested damages and injunctive relief.  (*Id.*).  The defendants separately moved to dismiss the complaint for failure to state a plausible claim. (Docket Entry Nos. 29, 33).

On August 19, the plaintiffs moved for leave to supplement the second amended complaint with new facts relating to the District's supervision of B.H. on her first day of school this year.

(Docket Entry No. 40).  The defendants separately oppose this motion.  (Docket Entry Nos. 42, 43).

The court heard oral argument on the motions.  (Docket Entry No. 44).  The parties' arguments and responses are examined in detail below.

## II.    The Legal Standard for a Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (citing *Twombly*, 550 U.S. at 556).

The court should generally give a plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile.  See *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend." (quotation omitted)); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  "Whether leave to amend should be granted is

entrusted to the sound discretion of the district court." *Pervasive Software*, 688 F.3d at 232 (quotation omitted).

### III.    Analysis

#### A.    The Texas Tort Claims Act

The second amended complaint repeats the allegation that the District is liable for B.H.'s injuries under the Texas Tort Claims Act.  The District reasserts sovereign immunity, arguing that the Texas Tort Claims Act waives a school district's immunity only for claims "arising from the use or operation of a motor vehicle."  (Docket Entry No. 29 at 5).  The District characterizes the plaintiffs' claims as alleging "negligent supervision of B.H. while she was on the bus, and not that her injuries were caused by the negligent use or operation of the bus."  (*Id.* at 6).  The plaintiffs object to this characterization.  (Docket Entry No. 32 at 4).  They argue that "the use of the school bus did more than merely furnish the condition that made [the injury] possible." (*Id.*).

"Generally, governmental units are entitled to immunity unless it has been waived." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 835 (Tex. 2018).  The Texas Tort Claims Act waives a school district's sovereign immunity from personal injuries from "the operation or use of a motor-driven vehicle."  TEX. CIV. PRAC. & REM. CODE §§ 101.021(1)–(2), 101.051; *see Hous. Indep. Sch. Dist. v. Durrell*, 547 S.W.3d 299, 306 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "[T]he only permissible state tort claim that citizens can bring against a school district in Texas is a claim for misuse of a motor vehicle."  *S.N.B. v. Pearland Indep. Sch. Dist.*, 120 F. Supp. 3d 620, 631 (S.D. Tex. 2014).

For a claim to fall under the sovereign-immunity waiver, there must be "a nexus between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries."  *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003).  "This nexus requires more than

mere involvement of property." *Id*.  The vehicle's use "must have actually caused the injury."  *Id*. (quoting *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001)).  It is not enough that the motor vehicle "furnish[es] the condition that makes the injury possible."  *Id*. (quoting *Dall. Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998)).

The plaintiffs argue that *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003), is inapposite because "the injuries complained of occurred when both involved individuals were already off the bus."  (Docket Entry No. 32 at 4).  However, even if *Whitley* is distinguishable, Texas case law makes clear that immunity under the Texas Tort Claims Act is waived only if the use or operation of the vehicle *caused* the injury.  *See Estate of Garza v. McAllen Indep. Sch. Dist.*, 613 S.W.2d 526, 528 (Tex. Civ. App.- Beaumont 1981, writ ref'd n.r.e.) ("Only if our plaintiffs' claims are shown to have been caused by the use of the motor vehicle can plaintiffs overcome the defense of governmental immunity."); *Turner v. Houston Indep. Sch. Dist.*, No. H-13-0867, 2013 WL 3353956, at *2 (S.D. Tex. Jul. 3, 2013) (collecting cases).  The Texas Supreme Court has ruled that "a plaintiff cannot invoke waiver merely by alleging use of tangible personal property; the use of the property must also cause his injury."  *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, No. 17-0730, 2019 WL 2710037, at *7 (Tex. June 28, 2019).  An injury occurring in a parked bus, but not caused by the bus, is not sufficient.  *See Turner*, 2013 WL 3353956, at *2; *Leleaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 53 (Tex. 1992) (if "the bus is only the setting for the injury, immunity for liability is not waived").

The first amended complaint alleged that C.B.'s actions and Henderson's and Castillo's failure to supervise caused B.H.'s injuries.  The second amended complaint does not add additional facts or allegations that change the analysis.  The bus was the location of the assault, but the bus

operation had nothing to do with the assault or B.H.'s injuries.  The plaintiffs argue that it was "the District's requirement that B.H. use the District bus for transportation"; the use of the bus to fulfill the special requirements for "securing, supervising, and transporting B.H."; and the District's negligent failure to fulfill those requirements that caused B.H.'s injuries.  (Docket Entry No. 32 at 4-5).  This may raise an inference that liability arises from the failure of District employees to supervise or monitor students on a bus, not from the bus.  *See, e.g., Whitley*, 104 S.W.3d at 543 ("Burkley and her accomplices caused Whitley's injuries, and the driver's failure to supervise Burkley may have contributed, but the operation or use of the bus did not."); *Estate of Garza*, 613 S.W.2d at 528 ("the injury arose out of the failure to control and supervise the public, and not from the operation or use of a motor vehicle.").  Because there is no nexus between the bus's use or operation and B.H.'s injuries, the Texas Tort Claims Act does not waive the District's immunity for the plaintiffs' tort claim.

The tort claim is dismissed, with prejudice and without leave to amend, because amendment would be futile.

### B.    The American with Disabilities Act Claims

The second amended complaint again asserts that the District denied B.H. "the benefits of services, programs, or activities" or otherwise "discriminated against" her because of her disability, violating the Americans with Disabilities Act.  (Docket Entry No. 26 at ¶ 5.3).  The Act states that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The District is a public entity.  *See* 42 U.S.C. § 12131(1) (defining public entity); 28 C.F.R. § 35.104.  The Fifth Circuit has recognized claims based on peer-to-peer harassment and intentional discrimination.

10

*See Doe v. Columbia-Brazoria*, 855 F.3d 681, 690 (5th Cir. 2017); *Windham v. Harris Cty.*, 875 F.3d 229, 235 (5th Cir. 2017); *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 380 (5th Cir. 2016). The second amended petition, like the first, does not identify a theory, but the plaintiffs' response to the motion to dismiss addresses both the peer-to-peer harassment and discrimination theories.

To state a plausible peer-to-peer harassment claim, the plaintiffs must allege facts showing that: (1) B.H. was an individual with a disability; (2) was harassed based on her disability; (3) the harassment was sufficiently severe or pervasive as to alter the condition of her education and create an abusive educational environment; (4) the District knew about the harassment; and (5) the District was deliberately indifferent. *Columbia-Brazoria*, 855 F.3d at 690.

This court previously found that the plaintiffs had failed to allege that C.B. sexually assaulted B.H. because of her intellectual disability or that the District acted with deliberate indifference. *Hernandez v. Fort Bend Indep. Sch. Dist.*, No. CV H-19-915, 2019 WL 1934674, at *11-12 (S.D. Tex. May 1, 2019). The District reiterates these points and adds that the plaintiffs have not alleged that the District had actual knowledge of the risk of C.B. sexually harassing another student. (Docket Entry No. 29 at 8-10).

To survive a motion to dismiss, the plaintiffs must show that the harassment was based on B.H.'s disability. The plaintiffs have amended the complaint to include an argument that but for B.H.'s disability, she would not have been on the special education bus and "the assault would not have occurred." (Docket Entry Nos. 26 at ¶ 5.4, 32 at 6). "But for" causation may be sufficient to survive a motion to dismiss when directly connected to the discriminatory conduct. *See Williams v. City of Dallas, Tex.*, No. 3:11-CV-00397-P, 2011 WL 13128695, at *5 (N.D. Tex. Aug. 2, 2011) ("Specifically, Plaintiff has alleged that but for her disability, she would have been reappointed as municipal judge."). But the plaintiffs do not allege a direct link between disability

11

and harassment.  This argument is not sufficient to support a plausible inference that C.B. assaulted B.H. because of her disability.  Although the plaintiffs allege that C.B. knew B.H. and "was familiar with her abilities, or lack thereof," (Docket Entry No. 32 at 6), this is not enough to support a plausible inference that the attack occurred because of B.H.'s disability and is insufficient to support a claim of peer-to-peer discrimination under the Americans with Disabilities Act.

The plaintiffs also must allege facts that could show both that the District knew about the risk of harassment and was deliberately indifferent to it.  The harassment in this case is a single incident—the assault that took place on January 23, 2017.  In their second amended complaint, the plaintiffs have added an earlier example in which the District did not adequately implement B.H.'s Individual Education Plan.  (Docket Entry No. 26 at ¶¶ 4.5-4.6).  In this incident, B.H. was left alone in a school hallway and began to undress.  (*Id.* at ¶ 4.6).  The plaintiffs assert that after this incident, District employees were on notice of the risk of substantial harm that could occur if B.H. were left unsupervised.  (Docket Entry No. 32 at 6).  The District argues that this event was insufficient to give them actual knowledge that B.H. would be subject to harassment because of her disability, because the events are "not remotely similar in nature."  (Docket Entry No. 34 at 4).

A school district is deliberately indifferent "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."  *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 997 (5th Cir. 2014) (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648–49 (1999)).  This standard "grants a high level of deference to the school's judgment."  *Nevills v. Mart Indep. Sch. Dist.*, 608 F. App'x 217, 221 (5th Cir. 2015).  "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."  *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (quoting *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998)).

12

"[E]ven if the state actor has actual knowledge of a substantial risk of harm to the victim, if he responds reasonably to that risk, he will not be held liable even though the harm ultimately occurs." *Ramos v. Webb Consol. Indep. Sch. Dist.*, 724 F. App'x 338, 340 (5th Cir. 2018).

The hallway incident is insufficient to support an inference that the District knew that B.H. was at substantial risk of sexual assault by another student. While B.H. was found undressing herself in the hallway, there is no allegation that other students caused her to do so. Even assuming that the District was on notice that leaving B.H. unsupervised could create a risk of substantial harm, including from other students, the plaintiffs admit that the District took action in response to the hallway incident. The plaintiffs met with District employees "the following day to discuss this abrogation of the specific IEP provisions, and setting the stage for a 're-ARD' in December 2016 to emphasize B.H.'s needs, and to emphasize the absolute necessity that B.H. be escorted by a school employee, and the need for close supervision." (Docket Entry No. 26 at ¶ 4.6). In accordance with this plan, B.H. was escorted by a school employee to the special education bus the day of the assault and another school employee was stationed on the bus. (Docket Entry No. 26 at ¶¶ 4.10, 4.13). That the bus monitor was "inept" or "ineffective"—negligent—does not amount to deliberate indifference by the District. *See I.F.*, 915 F.3d at 369.

To state a plausible intentional discrimination claim, the plaintiffs must allege facts that support a plausible inference that: (1) B.H. has a qualifying disability; (2) she was denied the benefits of services, programs, or activities for which the District was responsible, or was otherwise discriminated against by the District; and (3) the discrimination was by reason of her disability. *Columbia-Brazoria*, 855 F.3d at 690; *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011); *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004). "Intentional-discrimination liability requires pleadings and proof that the 'school district has refused to provide

13

reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program.'" *Columbia-Brazoria*, 855 F.3d at 690 (quoting *D.A. ex rel. Latasha A. v. Houst. Indep. Sch. Dist.,* 629 F.3d 450, 454 (5th Cir. 2010)).   A plaintiff must allege a request for reasonable accommodations.   *Shrub v. Univ. of Tex. Health Sci. Ctr. at Houston-School of Med.*, 63 F. Supp. 3d 700, 708–09 (S.D. Tex. 2014).   The plaintiff's request triggers the public entity's obligation to "engage in an interactive process" to "determine the best means of accommodating the plaintiff's disability." *Id*. at 709 (quotation omitted).

This court dismissed the plaintiffs' first amended complaint because it "did not contain factual allegations supporting a plausible claim that the District denied [B].H. the benefits of its services, programs, or activities because of her disability." *Hernandez*, 2019 WL 1934674, at *12. Nor did the earlier complaint "allege that the plaintiffs, as [B].H.'s guardians, requested a reasonable accommodation from the District that the District denied without engaging in an interactive process." *Id.*   The second amended complaint does not address these deficiencies.

The plaintiffs have alleged that C.B. has been removed from the school for now, in the future will attend the same high school as B.H., and the District "has not engaged in any efforts to address this contingency."   (Docket Entry No. 26 at ¶ 4.27).   This speculative claim is insufficient to support a plausible inference that B.H. has been denied a reasonable accommodation for her disability under the Americans with Disabilities Act.   C.B. is not currently attending the District high school that B.H. attends.   The plaintiffs have failed to state a plausible disability discrimination claim.

The plaintiffs' Americans with Disabilities Act claim is dismissed, with prejudice and without leave to amend.

### C.     The Title IX Claim

The second amended complaint renews the claim that the District discriminated against B.H. on the basis of her sex by depriving her of "the right of physical privacy, and to not be excluded from participation in, be denied the benefits of, or be subjected to discrimination." (Docket Entry No. 26 at ¶¶ 5.5-5.6).   The plaintiffs allege that "[t]he District's deliberate indifference, at a minimum, caused B.H. to be vulnerable to harassment."   (*Id*. at ¶ 5.6).   The District argues that it cannot be liable because it did not have actual knowledge of a substantial risk of harassment and was not deliberately indifferent.   (Docket Entry No. 29 at 13-15).

Title IX states that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  A school district that receives federal funds may be liable for student-on-student harassment if the district: (1) had actual knowledge of the harassment; (2) the harasser was under the district's control; (3) the harassment was based on the victim's sex; (4) the harassment was so "severe, pervasive, and objectively offensive" that it effectively barred the person's access to an educational opportunity or benefit; and (5) the district was deliberately indifferent.  *I.F.,* 915 F.3d at 368 (citing *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011)).

The plaintiffs do not allege that the District's response to the sexual assault constitutes deliberate indifference. Instead, the second amended complaint alleges that the District had "actual notice" of the risks of leaving B.H. unsupervised because of the earlier hallway incident.  (*See* Docket Entry No. 32 at 7).

The analysis of knowledge and deliberate indifference under Title IX is similar to the analysis under the American with Disabilities Act.  *See Columbia-Brazoria*, 855 F.3d at 690

15

(performing one analysis of actual knowledge for separate Title IX and Americans with Disability Act claims).   A school district is deliberately indifferent "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Lance*, 743 F.3d at 997.   As previously discussed in the Americans with Disabilities Act context, the hallway incident did not involve harassment from another student, or interactions with other students.   Nor did the District fail to reasonably respond to the hallway incident.   The plaintiffs allege that the District committed to better supervision. Allegations supporting negligence in implementing this commitment do not state a claim that the District was deliberately indifferent to the risk of sexual assault from failing to supervise B.H.   *See E. M. By Next Friend of J. M. v. Austin Indep. Sch. Dist.,* 770 F. App'x 712, 713 (5th Cir. 2019) (for deliberate indifference, "neither negligence nor mere unreasonableness is enough." (internal quotation omitted)).

The plaintiffs' Title IX claim is dismissed, with prejudice and without leave to amend.

### D.     The Negligent Supervision Claim

The second amended complaint reiterates the first amended complaint's allegations of negligent supervision of a minor child against C.B.'s grandmother and guardian, Mary Traynor. (Docket Entry No. 26 at ¶ 5.7).   Traynor separately filed a motion to dismiss, arguing that the plaintiffs' complaint does not provide her with fair notice of the claim.   (Docket Entry No. 33 at ¶ 6).

To state a negligence claim, a plaintiff must allege: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately resulting from that breach.   *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 178 (5th Cir. 2018).   "As a general rule, there is no duty to prevent the criminal actions of a third party who does not act under [a] defendant['s] supervision or control."   *Kanti v. Beaumont Indep. Sch. Dist.*, No. 1:05-CV-840, 2007 WL 9725069, at *4

(E.D. Tex. May 23, 2007) (quoting *Rodriguez v. Spencer*, 902 S.W.2d 37, 41-42 (Tex. App.—
Houston [1st Dist.] 1995, no writ).  The existence of a special relationship, such as parent-child, is
an exception.  *Id.*

A child, even a minor, is generally liable for his or her own torts.  *Rodriguez*, 902 S.W.2d
at 42.  "The mere fact of paternity or maternity does not make a parent liable to third parties for
the torts of his or her minor child."  *Id.*  A parent or guardian may be liable to a third party "when
the parent negligently permits the child to act in a manner likely to cause injury to another."  *Id.*
The parental "duty to protect third parties depends on whether the injury to the third party is
reasonably foreseeable under the circumstances as evidenced by the parent's knowledge, consent,
sanction, or participation in the child's activities, including the child's 'violent tendencies.'"  *Id.* at
42-43.

The plaintiffs allege that Traylor "knew, or alternatively, could or should have known her
ward had a tendency to act in a dangerous manner; she knew, or alternatively, could or should have
been able to foresee that her ward was capable of causing injury, and in particular, the type of
injury her ward willfully inflicted."  (Docket Entry No. 26 at ¶ 5.7).  In support, the second
amended complaint alleges that Phan, the Child Protective Services investigator, told the plaintiffs
that "C.B. was a danger to other females in his residence, and indicated the possibility of an earlier
report of sexual misconduct or other inappropriate behavior by C.B."  (Docket Entry No. 26 at ¶
4.27).  The plaintiffs do not allege that Traylor knew of this earlier sexual misconduct by C.B., or
that it was similar to what occurred with B.H.

The plaintiffs respond to Traylor's motion to dismiss with the allegation that Traylor was
"aware of (at least one) prior incident in which her ward behaved in an inappropriate manner in a
sexual context."  (Docket Entry No. 38 at 3).  This allegation is too vague to support an inference

17

that Traylor knew, or should have known, that C.B. was likely to commit a sexual assault.  The allegations of this vague incident do not support a claim for negligent supervision.

The second amended complaint explains that Traylor's negligence includes "her inability or unwillingness to supervise C.B.'s access to and use of the Internet, her failure to communicate the basic societal mores, taboos, and expectations of conduct to others, and especially to members of the opposite gender, and limitations on physical contact, particularly sexual contact." (Docket Entry No. 26 at ¶ 5.7).  In their response, the plaintiffs add that Traylor was inattentive to C.B.'s "access to and prurient interest in the morass of pornography and other graphic depictions of sexual activity, including assault and rape." (Docket Entry No. 38 at 4).  The plaintiffs fail to connect these allegations to the claims in their complaint.  The allegation that Traylor failed to restrict C.B.'s internet use does not support a plausible inference that Traylor knew that C.B. was a threat to other students, or that Traylor had a duty to third parties, such as B.H. and her parents.  *See Sanders v. Herold*, 217 S.W.3d 11, 17-18 (Tex.App.—Houston [1st Dist.] 2006, no pet.) (juvenile's parents did not have a duty to warn family friends that their son might pose a danger to children with whom he was left unsupervised, although they were aware that the juvenile enjoyed pornography and exhibited voyeurism).

The negligent supervision claim against Traylor is dismissed, with prejudice, and without leave to amend, because amendment would be futile.

### E.   Leave to Supplement

After responding to the defendants' motions to dismiss, the plaintiffs moved for leave to supplement their second amended complaint with facts about a recent incident in which the District again left B.H. unsupervised.  (Docket Entry No. 40).  The defendants separately oppose the motion on the ground that the proposed supplement is futile.  (Docket Entry No. 42 at 2; Docket

18

Entry No. 43 at 3).  Traylor also opposes the supplement because it would unduly prejudice her by delaying resolution of the dispute.  (Docket Entry No. 43 at 3).

Rule 15(d) provides that the court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  FED. R. CIV. P. 15(d).  This is permitted even though "the original pleading is defective in stating a claim or defense."  *Id.*; *see Connor v. Castro*, 719 F. App'x. 376, 379-80 (5th Cir. 2018).  The purpose of the rule is "to promote as complete an adjudication of the dispute between the parties as is possible." 6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1504 (3d ed. 2019).

In the proposed supplement, the plaintiffs allege that on August 15, 2019, the District "once again permitted B.H. to be unaccompanied"; that she was observed "going to and from classes unescorted"; and that she was ultimately "lost for a lengthy period of time" before being found in a back stairwell lacking any video surveillance.  (Docket Entry No. 40 at 1-2).  The plaintiffs allege that the District responded to this incident by admitting to a "lapse in supervision" and offering to create a "new process to ensure supervision."  (*Id.* at A-2 (internal quotation omitted)).  The plaintiffs also add that the District has "failed or refused" to inform the plaintiffs of C.B.'s status, and whether he will be attending the same school as B.H. in the future.  (*Id.*).

The District opposes the motion to supplement, arguing that it would be futile because "it has nothing to do with the live claims in the lawsuit."  (Docket Entry No. 42 at 2).  The "live claims" are under the Texas Tort Claims Act (waiver of immunity); Americans with Disabilities Act (discrimination); Title IX (harassment); and negligent supervision.  The proposed supplement does not relate to the use or operation of a motor vehicle, and does not support a claim under the Texas Tort Claims Act.  Nor does it relate to Traylor's supervision of C.B., or support a claim for

negligent supervision by Traylor.  The remaining issue is whether the proposed new allegations support a plausible claim under the Americans with Disabilities Act or Title IX.

The plaintiffs' peer-to-peer Americans with Disabilities Act and Title IX pleadings fail to support a plausible inference of deliberate indifference.  The supplemental allegations, together with the second amended complaint, show that the plaintiffs are attempting to plead negligence by District employees.  But negligence is insufficient under either the Americans with Disabilities Act or Title IX.  The plaintiffs fail to plead facts that could show that the District was clearly unreasonable in response to the information it had about the risks of inadequate supervision of B.H.  The proposed supplemental allegations do not resolve the deficiencies in pleading deliberate indifference.

Nor do the supplemental allegations support the plaintiffs' intentional discrimination claim under the Americans with Disabilities Act.  The plaintiffs have alleged in their second amended complaint that the District failed to respond to their requests for information about C.B.'s future attendance at B.H.'s high school.  (*See* Docket Entry No. 26 at ¶ 4.27).  The District's alleged failure to respond to the plaintiffs' requests for information about C.B.'s possible future school attendance is not a denied request for accommodation because of B.H.'s disability.  The request assumes an uncertain event, not requiring a prompt response because of its prospective and speculative nature.

The plaintiffs' motion for leave to supplement their second amended complaint is denied.

## IV.    Conclusion

The District's motion to dismiss is granted, (Docket Entry No. 29); Traylor's motion to dismiss is granted, (Docket Entry No. 33); and the plaintiffs' motion for leave to supplement is

denied, (Docket Entry No. 40).  Final judgment is entered by separate order.

SIGNED on September 13, 2019, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge